IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FENG GAO, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 21-cv-4055 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Feng Gao ("Plaintiff" or "Gao") brings suit against the partnerships and unincorporated associations listed on Schedule A to the complaint for patent infringement in violation of 35 U.S.C. § 271. Plaintiff filed a motion for a temporary restraining order [7], which was granted [11] but expired without being converted into a preliminary injunction, see [33]. Currently before the Court are Plaintiff's motion for preliminary injunction [18], motion to compel compliance with Local Rule 83.15 [31], and motion to dismiss Defendants' single counterclaim [37]. For the following reasons, Plaintiff's motion for preliminary injunction [18] and motion to compel [31] are denied. Plaintiff's motion to dismiss [37] is granted. This case is set for a telephonic status hearing on April 14, 2022, at 9:30 a.m. Participants should use the Court's toll-free, call-in number 877-336-1829, passcode is 6963747. A joint status report, including a discovery plan and a statement in regard to any settlement discussions and/or any interest in a referral to the Magistrate Judge for a settlement conference is due no later than April 12, 2022.

I.    **Background**

The following facts are taken primarily from the complaint [1]. Plaintiff is a resident of China. He is the inventor of earbuds that are manufactured, distributed, and retailed through his company, Qenla Electronic Technology (Dongguan) Co., Ltd. (the "Gao Products"). Gao Products are distributed and sold to consumers through the website "qenla.com," which was launched in May 2014. The complaint alleges that "Gao Products are known for their distinctive patented designs," which "are broadly recognized by consumers." [1] at 3. This suit concerns three of Plaintiff's design patents for earbuds: U.S. Patent No. D888,023 ("the '023 Patent"), which was issued on June 23, 2020; U.S. Patent No. D915,356 ("the '356 Patent"), which was issued on April 6, 2021; and U.S. Patent No. D915,357 ("the '357 Patent"), which was also issued on April 6, 2021 (together, the "Gao Designs").

Defendants are individuals or business entities that, on information and belief, reside and/or operate in China or other jurisdictions outside the United States. Defendants allegedly own and/or operate e-commerce stores under the seller aliases identified on Schedule A to the complaint. According to the complaint, "Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully offered for sale, sold, and/or imported into the United States for subsequent resale or use products that infringe directly and/or indirectly the Gao Designs." [1] at 10. The complaint contains three counts for violation 35 U.S.C. § 271, one based on each of the patented Gao Designs.

II.   **Motion to Compel Compliance with Local Rule 83.15**

Local Rule 83.15 provides that "[a]n attorney not having an office within this District ('nonresident attorney') may appear before this Court only upon having designated as local counsel a member of the bar of this Court having an office within this District upon whom service of papers

2

may be made." In his motion to compel, Plaintiff argues that Defendants fail to comply with this rule because their sole counsel of record, Mr. Shengmao Mu, listed only a New York, New York address on his appearance forms and no local counsel has been designated. See [31]. Plaintiff requests that Defendants be required to retain local counsel.

In response, Defendants seek "permission … to update" Mr. Mu's "status to Local Counsel as Defendants' Counsel does have an office in this district, which is located at 111 W. Jackson, Suite 1700, Chicago, IL, 60604." [35] at 1. Plaintiff opposes Defendants' request on the basis that it is "a thinly veiled attempt to circumvent both the letter and spirit of Local Rule 83.15." [36] at 1. According to Plaintiff, Mr. Mu's Chicago address is "a shared office space run by Regus with Offices available at $310 a month, Coworking space at $292 a month, and Virtual offices at $71 a month." Id. Plaintiff speculates (and Defendants do not deny) that Mr. Mu has a virtual office and no employees in Chicago. Plaintiff maintains that "Mr. Mu's virtual office is not an office in the district as contemplated under Local Rule 83.15." Id. at 2. Plaintiff further argues that "[t]o the extent Mr. Mu contends his Chicago virtual office is an attorney's office the existence of such an office may run afoul of the Illinois Supreme Court Rule 5.5(b)," which in general prohibits a lawyer who is not admitted in the jurisdiction from establishing an office in the jurisdiction for the practice of law. Id.

Assuming that Mr. Mu has only a virtual office in this District, Plaintiff has not demonstrated that this runs afoul of Local Rule 83.15. Plaintiff has not identified, and the Court has not found, any precedent addressing whether a virtual office should be considered an "office within this District" as that term is used in the local rules. The language of the rule contemplates that the office in the District is one where "service of papers may be made." Plaintiff does not contend that he tried and was unable to serve papers at the Chicago address; if that were true, he

might have a stronger argument based on the text of the local rule. He also might have a stronger argument about the necessity of Mr. Mu's physical presence in the district if Mr. Mu had a history of failing to appear at in-person hearings. But thus far all hearings in this case (as well as most other cases during the COVID-19 pandemic) have been telephonic, and there is no indication that Mr. Mu would be unable to attend whenever in-person attendance is required. Even before the pandemic, the widespread use of electronic filing made physical presence in the district increasingly less important. As for Plaintiff's argument that Mr. Mu may be running afoul of the Illinois Supreme Court Rules, any questions concerning the application of state court rules to the novel situation of a "virtual" office should be addressed to the appropriate state authorities—for example, the ARDC or the Supreme Court Rules Committee. The motion to compel [31] is denied.

**III.     Motion for Preliminary Injunction**

    **A.     Legal Standard**

Section 283 of the Patent Act authorizes courts to issue injunctive relief "in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. A court's determination of whether to issue a preliminary injunction involves a two-step inquiry, with a threshold phase and a balancing phase. See *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1044 (7th Cir. 2017); *Vendavo, Inc. v. Long*, 397 F. Supp. 3d 1115, 1128 (N.D. Ill. 2019). "First, the party seeking the preliminary injunction has the burden of making a threshold showing: (1) that he will suffer irreparable harm absent preliminary injunctive relief during the pendency of his action; (2) inadequate remedies at law exist; and (3) he has a reasonable likelihood of success on the merits." *Whitaker,* 858 F.3d at 1044; see also *Valencia v. City of Springfield*, 883 F.3d 959, 965 (7th Cir. 2018). The likelihood of success and irreparable harm factors "are the most critical in a patent

case, and a court may deny a motion for a preliminary injunction if 'a party fails to establish *either* of the[se] two critical factors.'" *Pressure Specialist, Inc. v. Next Gen Manufacturing Inc.*, 469 F. Supp. 3d 863, 868 (N.D. Ill. 2020) (quoting *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1556 (Fed. Cir. 1994)).

If the movant successfully makes the required threshold showing, "the court must engage in a balancing analysis, to determine whether the balance of harm favors the moving party or whether the harm to other parties or the public sufficiently outweighs the movant's interests." *Whitaker*, 858 F.3d at 1044. The Court "employs a sliding scale approach" to the balancing analysis; "[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Valencia*, 883 F.3d at 966 (internal quotations marks and citation omitted). "Ultimately, the moving party bears the burden of showing that a preliminary injunction is warranted." *Courthouse News Service v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018).

### B.     Analysis

The Court confines its analysis of the motion for preliminary injunction to likelihood of success, because this factor is dispositive. See *Pressure Specialist*, 469 F. Supp. 3d at 868. "To establish a likelihood of success on the merits, a patentee must show that it will likely prove infringement of the asserted claims and that its infringement claim will likely withstand the alleged infringer's challenges to patent validity and enforceability." *Metalcraft of Mayville, Inc. v. The Toro Co.*, 848 F.3d 1358, 1364 (Fed. Cir. 2017). "[A] plaintiff cannot meet his burden where the accused infringer raises a substantial question as to infringement or invalidity." *Scholle Corporation v. Rapak LLC*, 35 F. Supp. 3d 1005, 1009 (N.D. Ill. 2014). As explained in this section, Plaintiff is not entitled to a preliminary injunction based on the showing he has made thus

far because Defendants have raised a substantial question as to the validity of Plaintiff's asserted patents.

Design patents enjoy a "presumption of validity." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1328 (Fed. Cir. 2015). Therefore, Plaintiff was not required to, and did not, "address invalidity as an initial matter in filing for a preliminary injunction." *Gaymar Industries, Inc. v. Cincinnati Sub-Zero Products, Inc.*, 790 F.3d 1369, 1375 n.7 (Fed. Cir. 2015); see also *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377 (Fed. Cir. 2009) ("if a patentee moves for a preliminary injunction and the alleged infringer does not challenge validity the very existence of the patent with its concomitant presumption of validity satisfies the patentee's burden of showing a likelihood of success on the validity issue"). The issue of invalidity was first raised by Defendants in their opposition to Plaintiff's motion for preliminary injunction. Defendants argue (among other things) that the asserted patents are invalid based on anticipation and obviousness, see 35 U.S.C. § 102 and 103, because there are numerous, similar prior arts that Plaintiff failed to disclose. See [21] at 5, 10.[1]

Defendants have the ultimate burden of persuasion to prove invalidity by clear and convincing evidence. *Technology Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327 (Fed. Cir. 2008). At the preliminary injunction stage, however, "the trial court does not resolve the validity question, but only makes an assessment of the persuasiveness of the challenger's evidence, recognizing that it is doing so without all evidence that may come out at trial." *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products, LLC*, 676 F Supp. 2d 752, 761 (E.D. Wis. 2009). "While it is not the patentee's burden to prove validity, the patentee must show that the alleged

---

[1] "The general meaning of prior art is knowledge that is available at a given time to a person of ordinary skill in the art." *Wimo Labs LLC v. Polyconcept N.A, Inc.*, 358 F. Supp. 3d 761, 765 n.6 (N.D. Ill. 2019).

infringer's defense lacks substantial merit." *New England Braiding Co., Inc. v. A.W. Chesterton Co.*, 970 F.2d 878, 883 (Fed. Cir. 1992).

"Under 35 U.S.C. § 102, a claim is invalid as anticipated 'if each and every limitation is found either expressly or inherently in a single prior art reference.'" *Riddell, Inc. v. Kranos Corp.*, 319 F. Supp. 3d 1071, 1092 (N.D. Ill. 2018) (quoting *King Pharm., Inc. v. Eon Labs, Inc.*, 616 F.3d 1267, 1274 (Fed. Cir. 2010)); see also *Microsoft Corp. v. Biscotti, Inc.*, 878 F.3d 1052, 1068 (Fed. Cir. 2017). "A prior art reference anticipates a patent's claim when the four corners of the document 'describe every element of the claimed invention, either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation.'" *In re Hodges*, 882 F.3d 1107, 1111 (Fed. Cir. 2018) (quoting *Spansion, Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331, 1356 (Fed. Cir. 2010)); see also *U.S. Water Services, Inv. v. Novozymes A/S*, 843 F.3d 1345, 1350 (Fed. Cir. 2016). "Anticipation is a two-step analysis. The first step is properly interpreting the claims. The second step is determining whether the limitations of the claims, as properly interpreted, are met by the prior art." *Homeland Housewares, LLC v. Whirlpool Corp.*, 865 F.3d 1372, 1374–75 (Fed. Cir. 2017); see also *Pressure Specialist*, 469 F. Supp. 3d at 869; *Cumberland Pharmaceuticals, Inc. v. Mylan Institutional LLC*, 137 F. Supp. 3d 1108, 1122 (N.D. Ill. 2015).

"Under 35 U.S.C. § 103, a claim is invalid as obvious 'if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill' in the relevant art." *Riddell*, 319 F. Supp. 3d at 1092. "[D]ifferences between the prior art reference and a claimed invention, however slight, invoke the question of obviousness, not anticipation." *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1371 (Fed. Cir. 2008). The obviousness inquiry

7

requires consideration of: "(1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the art; and (4) objective indicia of nonobviousness, such as commercial success, long felt but unsolved needs, and failure of others." *Campbell Soup Co. v. Gamon Plus, Inc.*, 10 F.4th 1268, 1275 (Fed. Cir. 2021) (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966)). "In the design patent context," the Court addresses the first three factors "by determining whether a designer of ordinary skill would have combined teachings of the prior art to create 'the same overall visual appearance as the claimed design.'" *Id.* (quoting *Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed. Cir. 1996)). This requires a two-step inquiry. "First, before the trier of fact can combine prior art references, it must determine whether there exists a 'primary reference,' *i.e.*, a single reference that creates 'basically the same visual impression' as the claimed design." *Id.* "To be 'basically the same,' the designs at issue cannot have 'substantial differences in the[ir] overall visual appearance[s]' or require 'major modifications'; any differences must instead be slight." *Id.* (quoting *Spigen Korea Co. v. Ultraproof, Inc.*, 955 F.3d 1379, 1383 (Fed. Cir. 2020)). "Second, if a primary reference exists, the trier of fact must determine whether, using secondary references, an ordinary designer would have modified the primary reference to create a design that has the same overall visual appearance as the claimed design." *Id.*

Defendants have produced a variety of prior art references that look similar, in varying degrees, to Plaintiff's patented designs. See [21] at 10; see also [21-3] (prior art patents), [21-4] (prior art YouTube videos). The prior art was disclosed as early as July 2016 and all of it was disclosed before the earliest possible priority date for Plaintiff, in November 2019. Plaintiff does not challenge that the prior art predates its patents, which were issued in 2020 and 2021. According to Defendants, "the overall impression of Plaintiff's patents are basically the same as the design

reference in the prior art, where Plaintiff just made minor changes. Looking at the claimed design as a whole, these changes would not make Plaintiff's patents non- obvious in light of prior arts." [21] at 10.

In response, Plaintiff argues that Defendants' anticipation and obviousness defenses fail because the prior art is less similar to his patented designs than Defendants' allegedly infringing designs are similar to his patented designs. "Chief among the differences between the Gao design and the cited pictures," Plaintiff asserts, "are the shape and nature of the connection of the body of the device and the support arm, the shape and appearance of the support arm, and the angles of the body and overall body shape and ornamental features." [26] at 4.

Neither side provides a thorough analysis of the applicable law or the particular designs and prior art references at issue here. The framework for determining whether patents are invalidated on anticipation or obviousness grounds is complex and does not easily lend itself to resolution in the few paragraphs of analysis offered by the parties. At this stage of the case, the Court need only make "an assessment of the persuasiveness of the challenger's evidence" and determine whether the patentee has "show[n] that the alleged infringer's defense lacks substantial merit." *Kimberly-Clark*, 676 F. Supp. 2d at 761; *New England Braiding*, 970 F.2d at 883. The Court will make the best assessment it can based on the limited information provided.

The patents and other images provided by the parties depict earbud designs that are substantially similar, if not identical. Here is a comparison of Plaintiff's patented design with Defendants' designs, see [21] at 13:

9



Upper Left: One of Defendants' Products; Upper Right: Plaintiff's '023 Patent
Lower Left: Plaintiff's '357 Patent;   Lower Right: Plaintiff's '356 Patent

10

Here is a comparison of Plaintiff's patented design and two of the prior art references produced by Defendants, see [21] at 11:



Plaintiff's '023 Patent (Above) vs. Prior Art of US D827,616 (Below)



Plaintiff's '357 Patent vs Prior Art of US D863,265

The proffered designs are somewhat difficult to compare because they depict different angles. From what can be seen in the images, however, all the designs look quite similar. The '616 patent (issued September 4, 2018) particularly looks similar in shape to both the asserted patents and the allegedly infringing designs. The only obvious difference is that the short, straight-edged end of the earbud body is angled on the '616 patent design, rather than straight (i.e. forming a 90 degree angle) as on Plaintiff's design. See also [21-3] at 21-28 (additional views of designs).





FIG.5

Apart from the prior art patents, Defendants also provide screenshots of YouTube videos depicting additional products that appear to be very similar to Plaintiff's patented designs. For example, see [21-4] at 4:



[21-4] at 9:

13



These images are sufficiently persuasive evidence that Plaintiff's patents have the same overall visual appearance as at least some of the prior art offered by Defendants, such that Plaintiff's patents may be invalid for obviousness. See *Campbell Soup*, 10 F.4th at 1275. The Court does not see, and Plaintiff does not point out, any specific or noticeable differences in the "shape and nature of the connection of the body of the device and the support arm, the shape and appearance of the support arm, and the angles of the body and overall body shape and ornamental features," [26] at 4, that differentiate Plaintiff's patented designs from any or all of the prior art references. The complaint alleges that the "Gao Products are known for their distinctive patented designs," [2] at 3, but Plaintiff never explains what about the designs are distinctive. All of the prior art references produced by Defendants indicate that there are many earbud products on the market with extremely similar designs. Of course, the Court's view may change after the record is more developed and the parties have given further consideration to the proper invalidity analysis. But based on the limited record and argument before it, the Court concludes that Plaintiff has not made a sufficient showing of likelihood of success and on that basis alone is not entitled to injunctive relief. See *Pressure Specialist*, 469 F. Supp. 3d at 868.

IV.   **Motion to Dismiss Counterclaim for Abuse of Process**

Defendants bring a single counterclaim against Plaintiff, for abuse of process under Illinois common law. Defendants allege that Plaintiff did not do appropriate due diligence before filing his (purportedly meritless) complaint or request for TRO. Plaintiff's alleged motive "is to oppress Defendant[s'] lawful business." [25] at 28. Plaintiff allegedly "filed this suit, just to demand

money from innocent sellers like Defendants, whose accounts were frozen due to Plaintiff's wrongfully obtained restraining order." *Id*. at 29. Defendants seek damages caused by the asset constraint and attorneys' fees and costs incurred defending Plaintiff's suit.

Plaintiff moves to dismiss Defendants' counterclaim for failure to state a claim.[2] Plaintiff argues that Defendants' counterclaim does not state a claim for abuse of process because it fails to allege that Plaintiff committed an act in "the use of legal process not proper in the regular prosecution of the proceedings." Plaintiff explains that his "simple act of filing this lawsuit and seeking recourse via a TRO cannot be considered improper in "the regular prosecution of the proceedings." [37] at 5. "[T]emporary restraining orders that the Defendants complain about are necessary to prevent Defendants from transferring money overseas—an act that the Defendants did in the present case as soon as the TRO expired." *Id*.

Under Illinois law, "'[t]he *only* elements necessary to plead a cause of action for abuse of process are: (1) the existence of an ulterior purpose or motive and (2) some act in the use of legal process not proper in the regular prosecution of the proceedings.'" *Pace v. Timmermann's Ranch & Saddle Shop Inc.*, 795 F.3d 748, 757 (7th Cir. 2015). "Because the tort of abuse of process is not favored under Illinois law, the elements must be strictly construed." *Neurosurgery & Spine Surgery, S.C. v. Goldman*, 790 N,E.2d 925, 929-30 (Ill. App. 2003).

---

[2] A Rule 12(b)(6) motion challenges the legal sufficiency of the complaint. For purposes of a motion to dismiss under Rule 12(b)(6), the Court "'accept[s] as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff.'" *Calderon-Ramirez*, 877 F.3d at 275 (quoting *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016)). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must allege facts which, when taken as true, "'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007)). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

The second element, "the gravamen of the offense," *id*. at 930, is dispositive of Plaintiff's motion to dismiss. In order to satisfy the second element, "the plaintiff must plead facts that show a misapplication of process, or, in other words, the plaintiff must show that the process was used to accomplish some result that is beyond the purview of the process." *Neurosurgery*, 790 N.E.2d at 930 (citing *Community Nat'l Bank in Monmouth v. McCrery*, 509 N.E.2d 122, 124 (1987)); see also *Farwell v. Senior Servs. Assocs., Inc.*, 970 N.E.2d 49, 57 (Ill. App. 2012); *Bozek v. Bank of America, N.A.*, 2021 WL 4452227, at *11–12 (Ill. App. Sept. 22, 2021). "Process" is "used in the literal, legal sense of something issued by the court," and is "distinguished from pleadings, which are created and filed by the litigants.'" *Rubloff Dev. Group, Inc. v. SuperValu, Inc.*, 863 F. Supp. 2d 732, 747 (N.D. Ill. 2012) (quoting *Kumar v. Bornstein,* 820 N.E.2d 1167, 1173 (Ill. App. 2004)) (emphasis in *Kumar*). "When the process is used only for its intended purpose, there can be no cause of action for abuse of process, even if the existence of an ulterior purpose or motive is shown." *McCrery*, 509 N.E.2d 122, 124 (Ill. App. 1987); see also *Neurosurgery*, 790 N.E.2d at 930. "In other words, the defendant must have intended to use the action to accomplish some result that could not be accomplished through the suit itself." *Reed v. Doctors' Assocs., Inc.*, 824 N.E.2d 1198, 1206 (Ill. App. 2005) (citing *Landau v. Schneider*, 506 N.E2d 735, 737 (Ill. App. 1987)). "The usual case of abuse of process is one of some form of extortion, using the process to put pressure on someone to compel him to pay a different debt or to take or refrain from taking some other action." *McCrery*, 509 N.E.2d at 124 (citing Restatement (Second) of Torts, § 682 (1977)).

The Court agrees with Plaintiff that Defendants have failed to allege facts sufficient to plausibly suggest that Plaintiff committed some act in the use of legal process not proper in the regular prosecution of the proceedings. Plaintiff's mere filing of a lawsuit against Defendants

16

"does not constitute abuse of process." *Kirchner v. Greene*, 691 N.E.2d 107, 116 (Ill. App. 1998), even if it is ; see also *McCrery*, 509 N.E.2d at 124; *Reed v. Doctors' Assocs., Inc.*, 824 N.E.2d 1198, 1206 (Ill. App. 2005).

As to whether obtaining a TRO to temporarily freeze Defendants' bank accounts could plausibly be considered an abuse of process, the Court finds *Erlich v. Lopin-Erlich*, 553 N.E.2d 21, 22 (Ill. App. 1990), instructive. In *Erlich*, the Illinois Appellate Court held that "[i]n a marriage dissolution proceeding, it is proper to prevent one spouse from secreting or disposing of marital assets," and therefore "[t]he use of the process, *i.e.*, obtaining a TRO, is not extraneous to the purpose of the proceeding, and was the proper subject of a TRO." *Id*. "The fact that the representations made to the court were allegedly false" did "not alter" the court's conclusion. *Id*.; see also *Olsen v. Karwoski*, 386 N.E.2d 444, 451 (Ill. App. 1979) (no abuse of process action where plaintiff alleged certain psychiatrists filed false affidavits to expedite plaintiff's involuntary commitment to a mental hospital, where affidavits were of the type described in the Mental Health Code for emergency admissions). Similar to *Erlich*, TROs are regularly used in patent cases to prevent alleged infringers from disposing of the profits of alleged infringement activity, and therefore are not extraneous to the purpose of the proceeding and the proper subject of a TRO. "When the process is used only for its intended purpose, there can be no cause of action for abuse of process, even if the existence of an ulterior purpose or motive is shown." *McCrery*, 509 N.E.2d at 124. Since Plaintiff obtained a TRO for its intended purpose—to prevent Defendants from dissipating assets—Defendants fail to state a claim for abuse of process. Plaintiff's motion to dismiss the counterclaim is granted.

## V. Conclusion

For these reasons, Plaintiff's motion for preliminary injunction [18] and motion to compel [31] are denied. Plaintiff's motion to dismiss [37] is granted. This case is set for a telephonic status hearing on April 14, 2022, at 9:30 a.m. Participants should use the Court's toll-free, call-in number 877-336-1829, passcode is 6963747. A joint status report, including a discovery plan and a statement in regard to any settlement discussions and/or any interest in a referral to the Magistrate Judge for a settlement conference is due no later than April 12, 2022.

Dated: April 4, 2022

Robert M. Dow, Jr.
United States District Judge